UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


TIMOTHY M. PROSSER,                    )
                                       )
            Petitioner,                )
                                       )
      v.                               )        No. 4:09CV00139 AGF
                                       )
STEVE LARKINS,                         )
                                       )
            Respondent.                )

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se petition of Missouri state prisoner,

Timothy M. Prosser, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner

was convicted of the Class A felony of trafficking in the first degree, Mo. Rev. Stat. §

195.222,[1] the Class C felony of possession of a chemical (pseudoephedrine) with intent to

create a controlled substance, Mo. Rev. Stat. § 195.420, and the Class D felony of

possession of paraphernalia with intent to use, Mo. Rev. Stat. § 195.233, arising out of

events that occurred on December 12, 2003. The trial court sentenced Petitioner to life

imprisonment without parole on the trafficking charge, a seven-year term of

imprisonment for possession of pseudoephedrine with intent to create a controlled

_____

[1] Specifically, Section 195.222(8)(1) of the Missouri Revised Statutes provides
that when first-degree trafficking of methamphetamine involves more than thirty but less
than ninety grams, "the person shall be sentenced to the authorized term of imprisonment
for a [C]lass A felony." Section 195.222(8)(2) provides that when first-degree trafficking
of methamphetamine involves ninety grams or more, "the person shall be sentenced to the
authorized term of imprisonment for a [C]lass A felony which term shall be served
without probation or parole."

substance, and a four-year term of imprisonment for possession of drug paraphernalia with intent to use.

The Missouri Court of Appeals affirmed Petitioner's conviction on direct appeal, and also affirmed the denial of his motion for post-conviction relief. (Resp. Exhs. H and K.) In addition, Petitioner unsuccessfully sought state habeas relief pursuant to Missouri Supreme Court Rule 91.

In this action for federal habeas relief, Petitioner asserts that his constitutional rights were violated in the following ways:

(1) the search warrant was insufficient under the Fourth Amendment because it was based on a single affidavit, described property belonging to a confidential informant, not to Petitioner, and omitted Petitioner's name;

(2) the trial court erred in refusing to inform the jury, or in refusing to allow counsel to argue to the jury, that the first degree trafficking charge carried a mandatory sentence of life without probation or parole if the quantity involved was more than 90 grams;

(3) the trial court abused its discretion by overruling Petitioner's hearsay objection to a police officer's testimony regarding information obtained from the confidential informant;

(4) the trial court erred by instructing the jury on the Class C felony, possession of a chemical with intent to create a controlled substance, instead of the Class D felony, possession of ephedrine with the intent to manufacture methamphetamine;

(5) the State lacked authority to arrest and prosecute Petitioner as the evidence that formed the basis for probable cause to arrest was discovered pursuant to a search warrant that was invalid for the reasons described in Ground One;

(6) Petitioner's conviction was not supported by sufficient evidence;

(7) (a) the police committed "outrageous" conduct with respect to the application and affidavit for a search warrant, and (b) defense counsel rendered ineffective

assistance in failing to seek dismissal of the charges based on that conduct;

(8) the consecutive sentences imposed on Petitioner are unconstitutional because they exceed the statutory maximum sentence of life without parole;

(9) Petitioner received ineffective assistance of counsel in that: (a) trial counsel gave Petitioner legal advice that was incorrect as a matter of law and (b) both trial and direct appeal counsel failed to raise the claims described in the present petition in each respective court; and

(10) Petitioner's right to an impartial trial judge was denied because the trial judge acted in a manner that violated probable cause requirements regarding the search warrants.

Respondent argues that habeas relief should be denied because Petitioner's Grounds One and Five through Ten were procedurally defaulted, and the state court's adjudication of the remaining claims was legally and factually reasonable. For the reasons set forth below, habeas relief shall be denied.

## **BACKGROUND**

**Trial**

Prior to trial, Petitioner filed a motion to suppress the evidence seized during the search of his home. (Resp. Exh. D at 18-24.) Petitioner asserted that the search warrant was invalid because it was based on a single affidavit, described property belonging to a confidential informant, not to Petitioner, and omitted Petitioner's name, and did not include Petitioner's single-wide mobile home where the alleged evidence was seized. The trial court held a hearing on this motion, at which Petitioner's attorney presented argument and cross-examined Officer Craig, the officer who had secured the warrant. (Resp. Exh. F.) After considering the evidence and argument by counsel, the trial court

denied Petitioner's motion to suppress.  (*Id*. at 37.)  During pretrial proceedings, the State also filed a motion in limine seeking to exclude the introduction of testimony or evidence that the sentence imposed would be served without probation or parole.  The trial judge sustained the State's motion in limine.

A review of the transcript demonstrates the following facts:

At approximately 7:00 AM on December 12, 2003, Officer Timothy Craig of the Mineral Area Drug Task Force and Deputy Sheriff of Ste. Geneieve County, along with four other task force officers and members of the Missouri State Highway Patrol Special Emergency Response Team (S.E.R.T.) executed a search warrant at Petitioner's home, including his trailer, camper, and shed, off of Jackson School Road in Ste. Genevieve County.  Petitioner and a young woman named Nicole Bohnert were at the residence when the warrant was executed.  They were removed and Petitioner was placed in handcuffs prior to the search.  (Tr. at 118-19, 170-71, 195, 212, 268.)

Upon entering Petitioner's home, Officer Craig noted that the trailer was rather "messy" and noticed a large Rottweiler on the property.  Petitioner had video camera surveillance around the residence.  Although there was electricity in the home, there was no bathroom and no running water.  (Tr. at 119-21, 125-26.)

During the search, officers located several items on the kitchen table, including a coffee pot without a handle that contained methamphetamine; a soda bottle, missing its label, that contained methamphetamine; a glass jar containing methamphetamine; a shot glass; glass jars containing phenol acetone; a glass flask containing methamphetamine; a

- 4 -

ceramic cup containing methamphetamine; a Pyrex dish containing some sort of residue that appeared to be evaporated pseudoephedrine; a propane torch and tip; a glass tube containing methamphetamine residue; a measuring cup containing residue that appeared to be evaporated pseudoephedrine; a plastic jug containing iodine; and a glass jar which appeared to contain hydroiodic acid.  (Tr. at 129-30, 132-33, 135, 137, 148-49, 150-52, 154, 283-84.)

On the floor of the kitchen, officers located a milk jug containing some type of liquid and a gallon can of camp fuel.  Inside the kitchen cabinet, officers located glassware, including a glass flask containing methamphetamine.  Inside a cooler found on the kitchen floor, officers located marijuana seeds and marijuana paraphernalia inside a plastic yellow container, a quart jar of acetone, a bottle of Heet, an 18 ounce container of Red Devil Lye, a set of digital weight scales, a nose spray container with muriatic acid inside, pseudoephedrine pills, two bottle of iodine crystals, filters containing filtered methamphetamine, various rubber hoses and flanges, and a white powder residue that appeared to be crushed pseudoephedrine.  (Tr. at 139, 141-142, 154,158-62, 283-84.)

On the kitchen shelves, officers located an electric cooking skillet lined with aluminum foil, a Pyrex beaker, and a shot glass containing water.  The electric skillet was plugged in and the liquid inside the beaker was boiling and bubbling.  Officers unplugged the cord and took all of the items outside because the vapors are highly flammable.  Officers also located a toolbox in the kitchen, which contained a bottle of Red Devil Lye and numerous matches.  Officers also located various glassware, camp fuel, and rubbing

alcohol in different parts of the kitchen.  (Tr. at 165, 167-68, 170.)

Inside Petitioner's back room, officers located a suitcase which contained a glass measuring cup, a coffee grinder with white powder residue that appeared to be pseudoephedrine, two bottles of Heet, a bottle of rubbing alcohol, a large glass dish, funnel, digital weight scales, an electric cooking skillet, a glass coffee pot and a Pyrex dish.  Inside another bedroom, officers located a cooling flask and pseudoephedrine pills. (Tr. at 171-176.)

In the living room, officers located surveillance equipment including a camera above the front door, television monitors connected to the surveillance camera, a police scanner, and an SKS assault rifle located near the front door.  Elsewhere in the home, officers located a 9-millimeter semi-automatic pistol, a .380 caliber semi-automatic pistol, a small shotgun, and a Winchester rifle.  Other weapons were located in Petitioner's camper.  There was approximately 351.11 grams of methamphetamine seized from Petitioner's home and tested.  Phenol acetone seized from the home weighed approximately 21.34 grams.  (Tr. at 177-86, 188, 283-84.)

A couple of weeks after his arrest, Petitioner called Nicole Bohnert from the county jail, telling her that he did not have a chance to reach for his guns when the police executed the search warrant, and that she could "buy a bag of happiness" with some money that he was going to provide her through his family members.  (State's Exh. 36.) Petitioner also told Bohnert not to plead guilty because law enforcement could not blame her for what they found at Petitioner's house and that he had known that his home was

going to be searched, he just did not know when it was going to happen.  (State's Exh. 36).

At trial, the State called Officer Craig to testify.  On re-direct examination, he testified as follows regarding the warrant that he had executed at Petitioner's residence:

Q. (By The State): Under this search warrant, the one that the judge issued at 5:20, would you have had to knock on the defendant's door and announce that you had a search warrant and given him an opportunity to come to the door?
A. Yes.
Q. Now, you indicated that around 7:20, after this first search warrant was issued, you had the confidential informant, who I guess is no longer confidential, Shane Irwin, he went to the house, is that correct?
A. That's correct.
Q. And sometime after 7:20, when he left the defendant's residence, he told you things that led you to apply for a second search warrant of the same residence; is that correct?
A. That's correct.
Q. And this second search warrant, State's Exhibit 1, is what's called a no-knock warrant; is that correct?
A. That's correct.
[…]
Q. Was the second search warrant a no-knock search warrant?
A. Yes, it was.
Q. Why did you think that it was important to get a no-knock search warrant when you already had, what I'll call, a knock search warrant.
A. After meeting with the informant after his second trip to the residence, he revealed to me some things that happened that led us to believe that we needed a no-knock search warrant.
Q. Well, Tim, don't be vague here.  Did he tell you about there being weapons inside the residence?
A. The informant told me, and which is indicated on the recording, that –
Defense Counsel: Objection, Judge, as to hearsay.
The State: Well, this explains why he went to it.  They're making this sound like this was some sort of sinister plan on his foot.  He's allowed to explain why he went from a regular knock search warrant to a no-knock search warrant.

The Court: Not for the truth of it but to explain his actions. It's an exception to hearsay. Objection is overruled.

Defense Counsel: Judge, for the record, we would just like to have our objections noted under *Crawford v. Washington* as to hearsay.

The Court: Objection is noted.

Q. (By The State): Why did you decide, having had a knock search warrant, that you wanted a no-knock search warrant?

A. The informant made reference to the SKS assault rifle at the door. Mr. Prosser, as indicated on the recording, there was a tape placed on the informant, if I didn't make that clear, so everything that was said was recorded between Mr. Prosser and the informant. He asked the informant, Mr. Prosser asked the informant if he was with the police or working with the police. At that time he displayed a 9 millimeter pistol that was in his waistband and said that, "I'll shoot the cops," or "I won't go down without a fight if they come here."

(Tr. at 244-47.)

At the close of evidence, Petitioner filed a motion to submit a modified instruction to the jury or, in the alternative, to argue to the jury, that the charge of trafficking in the first degree required a life sentence to be served without probation or parole arguing that such information is "clearly part of the total sentence to be served by the defendant before eligibility for early release is possible." ( Pet. Legal File, Exh. D, at 48). The court denied the Petitioner's motion.

With respect to the charge of trafficking in the first-degree, the judge instructed the jury (Instruction No. 6) as follows:

[I]f you find and believe from the evidence beyond a reasonable doubt: First. . . the defendant knowingly manufactured by the red phosphorus method 90 grams or more of any compound or mixture containing any quantity of methamphetamine. . . . Second, that defendant knew or was aware that the compound or mixture he manufactured contained methamphetamine . . . then you will find the defendant guilty under Count I of trafficking in the first degree.

- 8 -

With respect to Count II, the jury was instructed as follows:

> [I]f you find and believe from the evidence beyond a reasonable doubt. . . the defendant possessed pseudoephedrine. . . the defendant knew or was aware of its presence and nature. . . the defendant did so with the intent to process pseudoephedrine to create methamphetamine, a controlled substance, then you will find the defendant guilty under Count II of possession of a chemical with the intent to create a controlled substance.

(Pet. Legal File, Ex. D at 103).

The jury found Petitioner guilty of Count I, trafficking in the first degree, a Class A felony; Count II, possession of a chemical (pseudoephedrine) with intent to create a controlled substance, a Class C felony; and Count V, possession of paraphernalia with intent to use a controlled substance, a Class D felony.

At the sentencing stage of proceedings, the jury sent a note to the judge asking: "Number one, if we decide on an amount of years, will that be enforced, or will a percentage be served? Number two, will the sentence he is currently serving be served concurrent with the sentence we agree on, or will it be separate?" The judge responded: "The Court is not allowed to give you any further instruction in this matter."

The jury recommended a sentence of life imprisonment for trafficking in the first degree, a term of seven years for possession of pseudoephedrine with intent to create a controlled substance, and a term of four years for possession of paraphernalia with intent to use a controlled substance. The trial court imposed the recommended sentences, to run

consecutively,[2] and ordered that the life sentence be served without the possibility of parole.

**Direct Appeal**

On direct appeal, Petitioner raised four points including those set forth in federal habeas Grounds Two, Three, and Four listed above.

The Missouri Court of Appeals rejected Petitioner's claim, asserted here as Ground Two, based on the trial court's denial of Petitioner's motion to inform the jury that the trafficking charge would be served without parole. The appellate court reasoned that Missouri's adoption of a bifurcated trial procedure[3] did not change the settled law that issues of probation and parole were not for a jury's consideration. The appellate court rejected Petitioner's argument that the new procedure was intended to give juries the right to be informed when sentences imposed would be served without the possibility of parole.

The Missouri Court of Appeals also rejected Petitioner's claim, asserted here as Ground Three, that the trial court abused its discretion in overruling Petitioner's hearsay objections to the testimony of Officer Craig. The appellate court reasoned that Officer Craig testified that the confidential informant said that Petitioner had weapons in his home

---

[2] The term of life imprisonment was to run consecutively to the other two sentences and to a sentence imposed on Petitioner in a Madison County case, No. 02CR614960.

[3] The bifurcated procedure provides that, if a jury finds a defendant guilty at the first stage of trial, the jury shall "assess and declare the punishment as authorized by statute" at the second stage of trial.

and had threatened to use force against officers if they came to his home.  The appellate

court reasoned that the statements were offered not for the truth of the matter asserted, but

to explain subsequent police conduct, the decision to obtain a second, "no-knock warrant."

Therefore, the appellate court concluded that the trial judge had properly overruled the

hearsay objection.

Finally, the Missouri Court of Appeals rejected Petitioner's claim, raised here as

Ground Four, asserting that the trial court's instruction and sentencing of Petitioner on the

Class C felony, possession of a pseudoephedrine with intent to create a controlled

substance, rather than on the Class D felony, possession of paraphernalia with the intent to

use.  Petitioner raised this claim as an unreserved issue for plain error, but the appellate

court concluded that the more recently enacted statute classifying Petitioner's conduct as a

Class D felony, Mo. Rev. Stat. § 195.246, did not prohibit the application of Mo. Rev.

Stat. § 195.240, which classified Petitioner's conduct as a Class C felony.  The appellate

court further reasoned that where a defendant's conduct constitutes a criminal offense

under two statutes, the State has discretion to proceed under either statute.

**Post-conviction Proceedings**

Petitioner filed a pro se state post-conviction motion and his appointed counsel

filed an amended motion which was denied without an evidentiary hearing.  In a pro se

appeal from the denial of the state post-conviction motion, Petitioner raised six issues, one

of which is relevant here.[4]  Representing himself during his post-conviction appeal,

Petitioner did not file a separate post-conviction legal file with the Missouri Court of

Appeals.  (Resp. Exh. J at 6 n.1.)  Therefore, the only document on file evidencing his

post-conviction proceedings at the circuit court level is the Circuit Court's judgment.

(Resp. Exh. J at A1.)

On appeal from the denial of state post-conviction relief, the Missouri Court of

Appeals denied all claims.  Petitioner argued that the motion court clearly erred in denying

his post-conviction motion without a hearing because his residence was searched without a

valid search warrant, federal habeas Ground One above.  As he had in his pretrial motion

to suppress, Petitioner asserted that the search warrant was invalid because it was based on

a single affidavit, described property belonging to a confidential informant, not to

Petitioner, and omitted Petitioner's name, and did not include Petitioner's single-wide

mobile home where the alleged evidence was seized.

The Court of Appeals denied Petitioner's motion as unreviewable for failure to

comply with Supreme Court Rule 84.04 which states, among other requirements, that an

appellant's brief must contain "a fair and concise statement of the facts relevant to the

questions present for determination without argument."  The Court of Appeals determined

that Petitioner's brief failed to include any objective facts or elaboration on the trial

---

[4]     Petitioner failed to advance Grounds Five through Ten in either his direct or
post-conviction appeals.  (Resp. Exh. A; Resp. Exh. I.)  He did, however, raise those
grounds in a state habeas petition in the Missouri Supreme Court. (Resp. Exh. L.)

court's alleged error, failed to state the legal reasons for the trial court's alleged error, and failed to cite any legal authorities in support of his position. In addition, the Court of Appeals concluded that Petitioner's arguments, as presented, did not support a claim of reversible error. Finally, Petitioner's brief failed to include page numbers and to satisfy other requirements spelled out in Supreme Court Rule 84.04.

Petitioner also filed a state habeas petition in the Missouri Supreme Court under Supreme Court Rule 91, raising for the first time on post conviction review the claims set forth here as Grounds Five through Ten. (Resp. Ex. L.) The Missouri Supreme Court reviewed Petitioner's grounds and summarily denied them without ordering respondent to show cause.

## DISCUSSION

### Procedural Default

"To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording [the state courts] a fair opportunity to apply controlling legal principles to the facts bearing on the claim." *Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Id.* at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. *Id.* at 1022 (quoting *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)). "[A] habeas petitioner's default will be excused only if he shows cause and prejudice for the default or

a miscarriage of justice." *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006).

"Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of

the charges, a [federal habeas] court may not reach the merits of procedurally defaulted

claims in which petitioner failed to follow applicable state procedural rules in raising the

claims." *Skillicorn v. Luebbers*, 475 F.3d 965, 976-77 (8th Cir. 2007).

Under the doctrine of procedural default, "a federal [habeas] court will not review

the merits of claims, including constitutional claims, that a state court declined to hear

because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, No.10-

001, 2012 WL 912950, at *6 (Mar. 20, 2012). An exception to this rule is that "[a]

prisoner may obtain federal review of a defaulted claim by showing cause for the default

and prejudice from a violation of federal law." *Id.*[5]

"'[T]he existence of cause for procedural default must ordinarily turn on whether

the prisoner can show that some objective factor external to the defense impeded

[Petitioner's] efforts to comply with the State's procedural rule.'" *Greer v. Minnesota.*,

493 F.3d 952, 957 (8th Cir. 2007) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

---

[5] The Court can also reach the merits of Petitioner's claims if he can show that he is "probably actually innocent" of the crimes for which he was convicted, by proving his allegations of constitutional error "with new reliable evidence . . . that was not presented at trial," and establishing "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Bowman v. Gammon*, 85 F.3d 1339, 1346 (8th Cir. 1996) (citing *Schlup v. Delo*, 513 U.S. 298 (1995)). Petitioner fails to make this showing.

"There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement[s] been clearly defined." *LaGrone v. Steele*, No. 4:07cv1255, 2010 WL 3488564, at *9 (E.D. Mo. Aug. 13, 2010) (citing *Ivy v. Caspari*, 173 F.3d 1136, 1140 (8th Cir. 1999). What has been established is that a "fail[ure] to raise [a] claim despite recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486.

Petitioner presented federal habeas Grounds Five through Ten in a state habeas petition in the Missouri Supreme Court but did not present the claims in either his direct or post-conviction appeals. The Eighth Circuit has consistently held that the presentation of the federal grounds in the state court petition for a writ of habeas corpus under Missouri Supreme Court Rule 91 does not satisfy the requirement that a petitioner properly present the merits of his federal grounds to the state trial and appellate courts. *See Anderson v. White*, 32 F.3d 320, 321 n.2 (8th Cir. 1994); *Byrd v. Delo*, 942 F.2d 1226,1232 (8th Cir. 1991) (finding on the basis of United states Supreme Court precedent there is simply no reason to construe an unexplained Rule 91 denial as opening up the merits of a previously defaulted federal issue."); *Roger v. Bowersox*, No. 4:05-CV-2051-DDN, 2008 WL 4790344, at *12 (E.D. Mo. Oct. 31, 2008). In addition, the Missouri Supreme Court's summary denial of Petitioner's grounds is presumed to have rested on Missouri's procedural rules. *Preston v. Delo*, 100 F.3d 596, 600 (8th Cir. 1996). As such, Grounds Five through Ten are procedurally defaulted and therefore unreviewable by the Court. *Martinez,* 2012 WL 912950, at *6. Petitioner does not allege any cause for his default and

makes no showing, based on new evidence, that he is actually innocent. On this basis, the Court concludes that Grounds Five through Ten are procedurally defaulted.

Ground One presents a slightly different situation; this claim was asserted by Petitioner in his appeal from the denial of his post-conviction motion. Petitioner did not prepare a legal file relating to his post-conviction appeal, and it is unclear from the record whether Petitioner asserted it at the initial collateral review stage. (*See* Resp. Exh. I at 13, 37, Exh. J at A1.) Due to this lack of clarity, the Court will err on the side of caution and conduct a review below on the merits of Ground One.

In his Fourth Ground, Petitioner claims that the trial court erred by instructing the jury on a Class C felony instead of the lower Class D felony. Ground Four is also procedurally defaulted because Petitioner failed to preserve this argument for claim of error. The Missouri Court of Appeals exercised its discretion to decline Petitioner's request to review this claim for plain error, finding that Petitioner failed to establish substantial grounds for believing that a miscarriage of justice had occurred. Despite its refusal to engage in plain error review, the Missouri Court of Appeals opined that under Missouri law, the State had appropriately exercised its discretion to determine the crimes to be charged and the statutes under which to proceed.

Where, as here, a state court declines to engage in plain error review, a habeas claim is procedurally defaulted for purposes of federal review. *Kennedy v. Kemna,* 666 F.3d 472, 481-82 (8th Cir. 2012). In addition, upon consideration of the appellate court's alternative ruling regarding the State's discretion to determine what crime to charge, the

Court cannot conclude that this ruling was anything other than a reasonable application of Missouri law.

**<u>Standard of Review</u>**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),

[f]ederal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).

"For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* (quoting *Williams*, 529 U.S. at 410) (emphasis omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87; *see also Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.") (citation omitted).

The Court will review the merits of Grounds One, Two, and Three.

In Ground One, Petitioner contends that the search warrant for his home was insufficient under the Fourth Amendment because it was based on a single affidavit, described the land as belonging to another individual, and omitted Petitioner's name. Petitioner's Fourth Amendment claims are not cognizable in federal habeas proceedings unless he can prove that the state courts failed to afford him a full and fair opportunity to litigate them. *See Stone v. Powell*, 428 U.S. 465, 482 (1976); *Willett v. Lockhart*, 37 F.3d 1265, 1270 (8th Cir. 1994). Under the two-part test set forth in *Willett* for determining whether Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, such a claim is deemed "unreviewable by a federal habeas court, unless the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." *Willett*, 37 F.3d at 1273. "To show that he was not afforded an opportunity for full and fair litigation of his claim, [Petitioner] would have to show that the State 'provided no corrective procedures at all to address the alleged Fourth Amendment violation' or that the State 'provided a corrective mechanism, but he was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Chavez v. Weber,* 497 F.3d 796, 802 (8th Cir. 2007) (quoting *Willett*, 37 F.3d at 1271).

In this case, Petitioner cannot satisfy either prong of the *Willett* test because Missouri provides a procedure for raising Fourth Amendment claims and because

Petitioner actually litigated his claims in state court by filing and arguing a motion to suppress evidence. The state court not only provided an opportunity for Petitioner to argue this Fourth Amendment claims, but he availed himself of that opportunity. Because Petitioner received a "full and fair litigation of the Fourth Amendment claim," federal habeas relief is unavailable on Ground One. *Stone*, 428 U.S. at 494.

In Ground Two, Petitioner argues that the trial court erred in refusing to inform the jury, or in refusing to allow counsel to argue to the jury, that the first degree trafficking charge carried a mandatory sentence of life without probation or parole if the quantity involved was more than 90 grams. The Missouri Court of Appeals rejected the merits of this claim, holding that under well-establish Missouri law, "it is not error for the trial court to fail or refuse to inform the jury that no parole, probation, suspended sentences, or any other form of judicial clemency would be exercised in the event of conviction."

It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. *Taylor v. Bowersox*, 329 F.3d 963, 968 (8th Cir. 2003). Under Missouri law, matters of early release are extraneous to the jury's determination of guilt and punishment. *State v. Rollins*, 449 S.W.2d 585, 591 (Mo. 1970); *see also State v. Massey*, 60 S.W.3d 625, 628-29 (Mo. Ct. App. 2001). Therefore Petitioner's claim under Ground Two cannot form a basis for federal habeas relief under the due process clause unless it was "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996). The petitioner bears the burden of showing "a

- 19 -

reasonable probability that the error complained of affected the outcome of the trial – i.e.,

that absent the alleged impropriety the verdict probably would have been different."

*Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995) (quoting *Hamilton v. Nix*, 809 F.2d

463, 470 (8th Cir. 1987)).  Here, Petitioner makes no showing, much less demonstrates,

that the jury's verdict would have been different if it had been informed of the fact that the

sentence would be served without possibility of probation or parole.  The questions asked

by the jury do not persuade the Court otherwise.  In addition, given the overwhelming

evidence of Petitioner's guilt, the Court cannot discern on the record before it, a

reasonable probability that the outcome of the trial would have been altered if the jury had

known that the sentence carried no possibility of probation or parole.  Accordingly, the

Court concludes that Petitioner failed to show cause and prejudice resulting from the trial

court's refusal to inform the jury about the issue of early release during the jury's

assessment of punishment for first-degree trafficking.

In Ground Three, Petitioner argues that the trial court abused its discretion by

overruling Petitioner's hearsay objection to a police officer's testimony regarding

information obtained from the confidential informant.  The appellate court rejected this

argument on the merits because Officer Craig's testimony was offered to explain

subsequent police conduct in obtaining a second "no-knock warrant," and not for the truth

of the matter asserted.

"The Confrontation Clause bars 'admission of testimonial statements of a witness

who did not appear at trial unless he was unavailable to testify, and the defendant had had

a prior opportunity for cross-examination.'" *United States v. Spencer*, 592 F.3d 866, 878 (8th Cir. 2010) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)). As the Supreme Court made plain in *Crawford*, the Confrontation Clause "applies only to testimonial hearsay statements." *United States v. Holmes*, 620 F.3d 836, 841 (8th Cir. 2010). "*Crawford* is also limited to hearsay evidence–that is, evidence offered to prove the truth of the matter asserted." *Id.*

Addressing a somewhat similar situation, the Eighth Circuit in *Holmes* recognized that statements by an investigating officer regarding out-of-court statements by a confidential informant, offered to show the officer's knowledge and to establish the propriety of an investigation, and not offered for their truth, are not hearsay, and do not violate the Confrontation Clause if offered to "explain the reasons for or propriety of a police investigation." *Id.* (quoting other sources). The Court recognized, however, that such evidence will be allowed "only when the propriety of the investigation is at issue in the trial." *Id.*

Here, the prosecutor did not elicit testimony regarding the first search warrant or the propriety of the search warrant on his direct examination. Rather, the propriety of the search warrant was explored–and explored extensively–only by Petitioner in cross-examination of the attesting officer. It was during that cross-examination that the fact of the earlier search warrant was first raised. Thus, Petitioner opened the door and created the need for further clarification on re-direct regarding why the officers did not execute the first search warrant, and why they needed to obtain a second, no-knock search warrant.

As such, the propriety of the investigation and need to obtain a second search warrant was plainly relevant to the trial, and was made relevant by Petitioner's cross-examination. The trial court therefore properly overruled Petitioner's objection, and specifically noted on the record that the evidence was limited to explaining the investigation, and was not admitted for the truth of the informant's statements.

The Court concludes that because the evidence of the information received from the confidential informant was not admitted for its truth, it was not testimonial and does not implicate the Confrontation Clause. *See United States v. Rodriguez*, 484 F.3d 1006, 1013-1014 (8th Cir. 2007) (citing *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *see also Tennessee v. Street*, 471 U.S. 409, 414 (1985) (holding "[t]*he nonhearsay aspect* of [the testimony] ... raises no Confrontation Clause concerns.") (emphasis in the original); *Edwards v. State*, 200 S.W.3d 500, 512 (Mo. 2006) (citing *Crawford*, 541 U.S. at 59). Moreover, in light of the overwhelming evidence of Petitioner's guilt, and the fact that the firearms were in fact located in the search, even if the statements in question are deemed "testimonial" within the meaning of *Crawford*, the Court cannot conclude that Petitioner was prejudiced by this testimony. *See Holmes*, 620 F.3d at 844 (holding that an unwaived violation of the confrontation clause is reviewed for harmless error). Here, Petitioner fails to show cause and prejudice resulting from the trial court's rejection of his hearsay claim.

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Further, the Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Timothy Prosser for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2012.